# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**RECO EQUIPMENT, INC.,**

    **Plaintiff,**

    vs.

**JEFFREY S. WILSON,** *et al.***,**

    **Defendants.**

Case No. 2:20-cv-3556

Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on an Application to Stay Proceedings Pending Arbitration Pursuant to Ohio Revised Code 2711.02(B) filed by Defendant Jeffrey Wilson ("Wilson"). (ECF No. 46.) Plaintiff RECO Equipment, Inc. ("RECO") has filed a Response (ECF No. 51) and Wilson has filed a Reply. (ECF No. 52.) By Order dated March 2, 2021, the Court directed additional briefing on certain issues raised by the motion. (ECF No. 57.) Defendants filed supplemental briefs on March 4, and March 26, 2021. (ECF Nos. 58, 62.) RECO filed its supplemental brief on March 16, 2021. (ECF No. 59.) For the following reasons, the motion to stay (ECF No. 46) is **GRANTED**.

## I.

For ease of reference and context, the Court reiterates certain portions of its previous Order:

> The background of this case was set forth at great length in the Court's Opinion and Order granting RECO's motion for a preliminary injunction, (ECF No. 41), and will not be set forth in any detail here. In his current and succinct motion, Wilson, relying on Ohio Revised Code 2711.02(B), asserts that, under the terms of the

Employment Agreement dated January 23, 2019 (ECF No. 10),[1] arbitration must be compelled as to the remaining claims against him. Wilson expressly states that he is filing "this Application in his individual capacity," and the "Application is not intended to stay the proceedings of this trial as to the remaining Defendants."[2]

RECO opposes the motion, arguing that Wilson has engaged in conduct that amounts to a waiver of his arbitration rights. Further, RECO asserts that it would be prejudiced by a blanket stay of these proceedings because it would be required to adjudicate the two claims asserted against all three Defendants twice. (ECF No. 51 at 2.) Alternatively, RECO contends that any order issued by this Court compelling arbitration and staying the proceedings should be limited to only RECO's breach of contract claim against Wilson.

In reply, Wilson contends that the Employment Agreement contains a mandatory arbitration clause requiring both parties to submit all disputes arising under it to arbitration, with the exception of the right to seek injunctive relief. Wilson asserts that, now that injunctive relief has been granted, "ostensibly" preserving the status quo, it is time to arbitrate under the terms of the Agreement. Wilson disputes that his actions in defending himself against RECO's claims for injunctive relief have amounted to a waiver. In sum, Wilson argues that his motion to stay should be granted as a matter of law.

The starting point for the Court's analysis is the Employment Agreement itself. That Agreement contains the following language, relating to arbitration:

> **3.09 Disputes.** Except for the right to seek injunctive relief as set forth in Section 3 .08, all disputes arising hereunder shall be referred to binding arbitration to be conducted under the **Uniform Arbitration Act as adopted in Ohio**, to be conducted before a single arbitrator in St. Clairsville, Ohio. The award of the arbitrator shall be final and binding on the parties and judgment on such award may be entered in any court having jurisdiction thereof. In any such arbitration proceeding, the prevailing party, as determined by the arbitrator, shall be entitled to an award of its reasonable costs and attorneys' fees.

(ECF No, 10 at 28) (emphasis added).

---

[1] Wilson respectfully maintains his objections to the validity of the underlying Employment Agreement but asserts that the Court has found the Employment Agreement at least provisionally binding in its Opinion and Order of November 20, 2020. (ECF No. 46 at 2; ECF No. 52 at 1.)

[2] As Wilson notes, the other Defendants, Joseph Russo and Republic Equipment Holding LLC did not have any written agreement with RECO providing for arbitration of disputes between them. (ECF No. 46 at 1.)

The Ohio Arbitration Act ("OAA") is set forth in Ohio Revised Code Chapter 2711. The parties' briefing appears to assume, without much discussion, that the Ohio Arbitration Act represents Ohio's adoption of the Uniform Arbitration Act ("UAA") and that the OAA guides the Court's analysis here. Accordingly, Wilson cites R.C. 2711.02(B) as the basis for his motion to stay. That provision provides as follows:

> (B) If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

Under the OAA, R.C. 2711.02 requires a court to stay the trial of an action on application of one of the parties if: (1) the action involves an issue referable to arbitration under a written arbitration agreement, (2) the court is satisfied the issue is referable to arbitration under the agreement, and (3) the party seeking the stay is not in default in proceeding with arbitration. *Dozier v. Credit Acceptance Corp.*, 2019-Ohio-4354, ¶ 10, 135 N.E.3d 804, 807 (8th Dist. Cuyahoga Cty.) (citing *Eaton Corp. v. Allstate Ins. Co.*, 8th Dist. Cuyahoga No. 101654, 2015-Ohio-2034, 2015 WL 3421990, ¶ 17).

Although the Ohio Supreme Court does not appear to have addressed the issue, multiple Ohio Courts of Appeals have expressly held that where a claim is subject to arbitration under R.C. 2711.02, a stay of the entire action is required until the arbitrable claims are resolved. *See, e.g., Wolcott v. Summerville at Outlook Manor, L.L.C.*, 2016-Ohio-1237, 61 N.E.3d 853, 859 (10th Dist. Franklin Cty.) (finding no discretion to deny stay based on line of authority holding that R.C. 2711.02 requires a stay of the trial proceedings, regardless of whether the dispute also involves parties who are not a party to the agreement and who cannot be compelled to arbitrate) (citations omitted); *Rippe & Kingston Co., PSC v. Kruse*, 2014-Ohio-2428, ¶ 21, 2014 WL 2566287 (1st Dist. Hamilton Cty.) (upholding the stay of entire proceeding pending arbitration, despite the presence of nonarbitrable claims); *Maclin v. Greens Nursing and Assisted Living, L.L.C.*, No. 101085, 2014-Ohio-2538, 2014 WL 2612666, *2 (8th Dist. Cuyahoga County) (when a trial court determines that certain claims are subject to arbitration, it must stay the entire proceeding until those claims have been arbitrated, even though the action may involve both arbitrable and non-arbitrable claims); *Jarvis v. Lehr*, 2014-Ohio-3567, ¶ 11, 2014 WL 4088093, *3 (1st Dist. Hamilton Cty.) (in reversing and remanding with instructions to enter a stay recognizing that, once a court determines an issue in a proceeding is covered by a written arbitration agreement, even claims involving nonsignatories to the arbitration agreement are required to be stayed under R.C. 2711.02(B)).

As noted above, however, Wilson is not seeking a stay of the entire action here. Further, as an alternative to its waiver argument, RECO insists that a stay of the entire action is not required and suggests that a stay is discretionary.

(ECF No. 57 at 1-5.)

In their supplemental briefing, RECO contends that the Federal Arbitration Act ("FAA") should guide the Court's analysis here and that, applying the FAA, only the breach of contract claim should be arbitrated between RECO and Wilson under the terms of the Agreement and only this claim should be stayed. Accordingly, RECO requests that this Court (1) stay and compel to arbitration RECO's breach of contract claim against Wilson and (2) decline to stay and compel to arbitration RECO's misappropriation of corporate opportunity claims and RECO's misappropriation of trade secrets claims against Wilson, Russo, and Republic. Defendants, on the other hand, relying on the OAA, now request that that this entire action be stayed until the arbitrable claims between Wilson and RECO are resolved.

## II.

As the parties' supplemental briefing confirms, they dispute whether the FAA or the OAA governs the Employment Agreement's Dispute provision and, by extension, guides the Court's analysis here. Because this is a threshold question, the Court begins its analysis with this issue. For the following reasons, the Court concludes that the FAA applies.

As one court has explained:

> "The FAA applies to '[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction[.]" *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006) (quoting 9 U.S.C. § 2). "[T]he term 'involving commerce' in the FAA [i]s the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 123 S. Ct. 2037, 2040, 156 L.Ed.2d 46 (2003). The Supreme Court thus found it "perfectly clear that the FAA encompasses a wider range of transactions than those actually . . . 'within the flow of interstate commerce'" *Id.*

(quoting *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 115 S. Ct. 834, 839, 130 L.Ed.2d 753 (1995)).

*CK Franchising, Inc. v. SAS Servs. Inc.*, 398 F. Supp. 3d 163, 170 (E.D. Ky. 2019). The FAA generally applies to employment contracts with arbitration provisions. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001)).

Absent a dispute provision's clear intent otherwise, "the FAA generally preempts inconsistent state laws and governs all aspects of arbitrations concerning 'transaction[s] involving commerce[.]'" *CK Franchising, Inc. v. SAS Servs. Inc.*, 398 F. Supp. 3d 163, 170–71 (E.D. Ky. 2019) (quoting *Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 715 (6th Cir. 2014)). However, "parties may agree to abide by state rules of arbitration, and 'enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA.'" *Id.* at 715–16 (quoting *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 522–23 (6th Cir. 2012) (citations omitted)). "The central inquiry in this choice-of-law determination is whether the parties unambiguously intended to displace the FAA with state rules of arbitration[.]" *Id.* at 716. Ambiguities are resolved in favor of the federal standard. *Muskegon*, 462 F. App'x at 523 (citing *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 293 n.9 (2002)).

Here, as the Court previously has discussed, no choice of law provision governs the contract generally. (*See* ECF No. 41 at 10-13.) Instead, as noted, the arbitration provision provides that the arbitration is "to be conducted under the Uniform Arbitration Act as adopted in Ohio." In the Court's view, this language does not equate to a choice of law provision unequivocally governing the arbitration provision. First, the provision does not refer to Ohio law generally nor does it cite to the Ohio Arbitration Act, Ohio Revised Code Chapter 2711, specifically. This

5

failure makes the parties' intentions regarding the applicability of Ohio law less than clear. Moreover, even taking the provision's language at face value, as the parties' supplemental briefing confirms, whether Ohio has adopted the Uniform Arbitration Act, through the Ohio Arbitration Act or otherwise, is open to interpretation. As a result, this language is fairly described as confusing and not easily explained. In short, the provision's imprecise language creates an ambiguity. Because ambiguities are resolved in favor of the FAA, the Court concludes that the FAA applies to the circumstances here.

Under the FAA, the Court undertakes a 4-factor analysis:

> [W]hen considering a motion to stay proceedings and compel arbitration under the [Federal Arbitration] Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.,* 394 F.3d 444, 450–51 (6th Cir.2005). "In conducting this 'limited review,' any 'doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Oliver v. Jackson Family Enterprises, Inc*., No. CV 5:21-042-DCR, 2021 WL 1537574, at *2 (E.D. Ky. Apr. 19, 2021) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)); *see also In re: Auto. Parts Antitrust Litig*., 951 F.3d 377, 381 (6th Cir. 2020) ("we resolve 'any doubts concerning the scope of arbitral issues . . . in favor of arbitration.'").

As noted, when considering a motion to compel arbitration, a district court must determine, as a threshold matter, if the parties agreed to arbitrate. *Ingram v. Neutron Holdings, Inc.,* 467 F. Supp. 3d 575, 579 (M.D. Tenn. 2020) (citing *McGee v. Armstrong*, 941 F.3d at 865).

The court must "use state law to assess the existence of an agreement." *GGNSC Louisville Hillcreek, LLC v. Estate of Bramer*, 932 F.3d 480, 485 (6th Cir. 2019) (citations omitted).

Here, in the context of the preliminary injunction hearing, the Court, applying Ohio law, provisionally found that a valid Employment Agreement exists. Consistent with this current posture, for purposes of Wilson's motion, the parties do not dispute that Wilson and RECO agreed to arbitrate disputes arising under the Employment Agreement seeking other than injunctive relief. RECO, however, contends that Wilson has waived his right to arbitrate. The Court finds no merit to this argument and it warrants little discussion. First, RECO's supplemental briefing suggests that it has abandoned this argument. More significantly, however, under the clear language of Section 3.09, Wilson's efforts to defend himself against RECO's claims for injunctive relief cannot reasonably be construed as a waiver of his right to arbitrate any remaining disputes. As Wilson notes, the Employment Agreement "contemplates both injunctive relief and then arbitration, in separate proceedings, and that the two different species of relief are mutually exclusive." (ECF No. 52 at 3.) Further, Wilson explains that he promptly sought to invoke arbitration at the conclusion of the preliminary injunction proceedings consistent with the contract language. The cases cited by RECO in arguing to the contrary are distinguishable on their facts given the posture of the case as presented to this Court, and therefore, not persuasive. Accordingly, the motion to stay will not be denied on the basis of Wilson's alleged waiver.

Further, based on the parties' supplemental briefing, they agree that RECO's breach of contract claim against Wilson falls within the scope of the Employment Agreement's arbitration provision. The parties further agree that neither Russo nor Republic Equipment are parties to that Agreement and, therefore, not subject to its arbitration provision. (*See e.g.,* ECF No. 59 at 6.)

Consequently, the questions before the Court are limited: 1) whether RECO's two additional claims against Wilson fall within the scope of the arbitration agreement; and 2) whether the remainder of the current proceeding should be stayed pending arbitration.

A. **Scope of the Agreement**

Before deciding the scope of the agreement, the Court must decide who determines what disputes are arbitrable. The question of arbitrability is one for the courts unless the parties "clearly and unmistakably provide otherwise." *McGee v. Armstrong*, 941 F.3d at 865–66 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). The parties do not address this issue. Further, from its review of the arbitration clause,[3] the Court is not otherwise persuaded that the parties have clearly and unmistakably evinced their intention to delegate this issue to the arbitrator. Accordingly, the question of arbitrability for purposes of resolving the current motion lies with the Court.

District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement. *Fazio v. Lehman Bros.*, 340 F.3d 386, 395 (6th Cir. 2003) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). In doing so, courts

---

[3]The Sixth Circuit has held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *In re: Auto. Parts Antitrust Litig.,* 951 F.3d 377, 381–82 (6th Cir. 2020) (citing *Henry Schein, Inc.*, 139 S. Ct. at 529); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). Such a "delegation provision," is an additional, antecedent agreement and" the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 70. In *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020), *cert. denied sub nom. Piersing v. Domino's Pizza Franchising LLC*, 141 S. Ct. 1268 (2021), the Sixth Circuit held that the incorporation of the AAA Rules into an arbitration clause "shows that the parties 'clearly and unmistakably' agreed that the arbitrator would decide questions of arbitrability." Here, as noted, the parties have not argued, nor provided evidence, that a delegation provision exists in this case. Further, given the ambiguity surrounding the Agreement's reference to the UAA, to the extent that the UAA may contain provisions similar to the AAA, the Court cannot conclude that the parties here intended the arbitrator to decide questions of arbitrability.

8

consider whether an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement. However, "merely casting a complaint in tort does not mean that the arbitration provision does not apply." *Id*. Rather, torts can be covered by arbitration clauses if the allegations underlying the claims relate to matters falling within the agreement. *Id*. (quotation omitted).

Here, it is evident that the alleged misappropriation of trade secrets and of corporate opportunities in violation of state law also would constitute a violation of Wilson's Employment Agreement, and by extension fall within the purview of the arbitration clause as a dispute arising under the Agreement. Or, stated another way, it does not seem that these specific claims against Wilson could be maintained without reference to either the Employment Agreement or Wilson's employment relationship with RECO. For example, with respect to the misappropriation of trade secrets claim, RECP alleges in the Amended Complaint that "[w]hile employed by RECO … Defendant Wilson has withheld from RECO and misappropriated RECO's trade secrets and other confidential and proprietary information…." (ECF No. 10 at ¶ 45.) As for the misappropriation of corporate opportunity claim, the Amended Complaint alleges that "[w]hile employed by RECO … Defendant Wilson had access to and knowledge of RECO's plans to expand its footprint …." (*Id*. at 60.)

Moreover, the Employment Agreement contemplated that such activities are prohibited under its terms. Specifically, Section 3.01 provides, in part, that "it is essential to the protection of the Company's good will and to the maintenance of the Company's competitive position that the Confidential Information be kept secret and that Employee not disclose the Confidential Information to others or use the Confidential Information to Employee's own advantage or to the advantage of others." This connection is reflected in the breach of contract allegations of the Amended Complaint. (ECF No. 10.) For example, RECO alleges that "Defendant Wilson agreed that upon termination

of employment [he] would return all of RECO's … proprietary and other confidential information and [he] has breached his contractual and legal obligations" (*Id.* at ¶ 34); "RECO has grave concerns that Defendant Wilson in conspiracy with Defendant Russo and others has violated or will violate his obligations by, among other things, using RECO's confidential, proprietary, and trade secret information to solicit RECO's clients and potential clients" (*Id.*.at ¶ 35); "Defendant Wilson is continuing to violate his contractual and legal obligations by, among other things, his continued possession of RECO's confidential, proprietary, trade secret information…." (*Id.* at ¶ 36); "The confidentiality provisions of the Employment Agreement prohibit Defendant Wilson from withholding confidential information from RECO or disclosing or making use of RECO's confidential and proprietary information and work product materials." (*Id.* at ¶ 39).

Under the terms of the arbitration provision, except for the right to seek injunctive relief, "all disputes arising [under the Agreement] shall be referred to binding arbitration." (§3.09, ECF 10 at 28.) Given the plain contract language cited above, the Court concludes that the allegations underlying both of RECO's misappropriation claims as directed to Defendant Wilson relate to matters falling within the Employment Agreement. *Fazio,* 340 F.3d at 395. Because these claims against Defendant Wilson fall within the scope of the Arbitration Clause, they are referred to arbitration.

**B. Stay**

Having concluded that all of RECO's claims against Wilson are arbitrable, the Court turns to the remaining issue of whether RECO's claims against non-parties to the Employment Agreement, Defendants Russo and Republic Equipment, should be stayed pending the arbitration.

Under 9 U.S.C. § 3, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Jr. Food Stores, Inc. v. Hartland Constr. Grp., LLC*, No. 1:19-CV-00076-GNS, 2020 WL 1442889, at *3–4 (W.D. Ky. Mar. 24, 2020). The FAA, however, "does not require a stay of proceedings as to claims that are not being arbitrated." *Campagna v. GGNSC Louisville Hillcreek, LLC*, No. 3:16-CV-507-DJH-CHL, 2018 WL 8489604, at *1 (W.D. Ky. Oct. 3, 2018), *report and recommendation adopted*, No. 3:16-CV-507-DJH-CHL, 2018 WL 8489599 (W.D. Ky. Oct. 22, 2018) (quoting *Leafguard of Kentuckiana, Inc. v. Leafguard of Kentucky, LLC*, 138 F.Supp.3d 846, 859 (E.D. Ky. 2015)). When the district court concludes that some, but not all, of the claims are subject to arbitration, "it must determine whether to stay the remainder of the proceedings pending arbitration." *Id.* (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

The decision to stay litigation pending the outcome of arbitration is "one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 36 n.23 (1982). This discretion allows district courts to stay claims among non-arbitrating parties pending the outcome of arbitration. *Id.*; *see also McGill Smith Punshon, Inc. v. Fireblocks, LLC*, No. 3:18-CV-288-TMR, 2019 WL 3578651, at *7 (S.D. Ohio Aug. 6, 2019) (in staying non-arbitrable claims, recognizing that the Court has inherent power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants). In exercising its discretion, the Court considers whether arbitrable claims predominate or whether the outcome of nonarbitrable claims depend on the arbitrator's decision. *See Leafguard of Kentuckiana,* 138 F. Supp. 3d at 859 (E.D. Ky. 2015).

Based on the nature of this case and the interconnection between RECO's claims against Wilson, Russo, and Republic Equipment as set forth in the Amended Complaint, the Court finds that granting a full stay is an appropriate exercise of its discretion here. Staying this case may allow the arbitrator to clarify certain relevant legal issues and move this case towards resolution. *Jr. Food Stores, Inc.,* 2020 WL 1442889, at *3–4 (citing *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007) ("In many instances, moreover, district courts actually may prefer to stay the balance of the case in the hope that the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court.")). In short, the interests of judicial economy and consistency would be served by staying of the claims against Defendants Russo and Republic Equipment.

### III.

For the reasons stated above, Defendants' Motion to Stay (ECF No. 46) is **GRANTED** to the extent that RECO and Wilson shall submit to arbitration their entire dispute as set forth in the three claims directed to Wilson in the Amended Complaint. This case is **STAYED** until the conclusion of the ordered arbitration pursuant to 9 U.S.C. § 3. The parties are **ORDERED** to advise the Court when the arbitration proceedings have concluded and the stay should be lifted as to Defendants Russo and Republic Equipment.

**IT IS SO ORDERED.**

DATED: April 30, 2021

*/s/ Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**